## GRACE M. DOYLE'S CASE.

Suffolk.   March 5, 8, 1926. — June 2, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, & WAIT, JJ.

*Workmen's Compensation Act,* To what injuries act applies.

A nurse in the employ of a sanatorium was required to sleep on the premises so as to be at all times subject to call as well as to insure her presence at the hospital when the day began at seven o'clock.   While she was entitled to one day for herself each week, she had to be at breakfast on that day and would not know definitely until some time in the morning whether the day would be hers.   On a certain day assigned to her as her own, she was permitted to go off duty at 9 A.M., went to her room and later, while trying to reach the toilet, fell down an unlighted stairway.   She made a claim under the workmen's compensation act.   *Held,* that there was no break in the continuity of her employment and that a finding was warranted that her injuries arose out of and in the course of her employment.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board affirming and adopting findings by a single member and determining that injuries received by the claimant on December 19, 1924, while she was employed by the Wiswall Sanatorium, Inc., arose out of and in the course of her employment.

Material facts are described in the opinion.   The case was heard by *Morton,* J., and by his order a decree was entered in accordance with the decision by the Industrial Accident Board.   The insured appealed.

*G. Gleason,* for the insurer.

*P. L. Keenan,* for the claimant.

PIERCE, J.   This is an appeal by the insurer from a decree of the Superior Court affirming a finding of the Industrial Accident Board (G. L. c. 152), to the effect that the employee's injury arose out of and in the course of her employment.

The facts which would have warranted the Industrial Accident Board in its conclusion of fact are, in substance, as

follows: The employee, Grace M. Doyle, was employed as a nurse by the Wiswall Sanatorium, Inc., at a wage of $40 a month and her maintenance, that is, board and room. She had a day off every other week if nothing intervened. She had to be at breakfast on the day assigned to her as the day off, and there was a practice there "sometimes [they] were told as late as seven or eight o'clock in the morning that they would have to work that day and take some other day off." She was required to sleep on the premises as were all nurses, "they need them on call in case of emergency, if they are not there, 'we are never sure as to what time they will be on in the morning, the day begins at seven o'clock and we feel we can furnish the maintenance at a rate which she could not afford to pay outside.'" She worked from seven until seven one day and from seven until nine the next day unless she was called to do something different. After she got through her work at seven or nine o'clock she could leave the premises if she obtained permission from the head nurse or doctor. As the occasion should arise she was called back "on night duty to do night duty" and "was subject to call throughout any time during the day or night whenever the occasion might arise." As regards her day off she would not know definitely until some time in the morning of that assigned day whether the day would be hers to have free or not.

On the day of the accident, which would have been a "day off" if the accident had not occurred and nothing intervened, she worked until nine o'clock and then went to her room which was reserved for employees on the third floor of the Hastings House. She tried to go to the bathroom when she came off duty, there was some one in the bathroom taking a bath, then some one else went in; meantime she went to sleep, awoke at about one o'clock and got up to go to the bathroom. The entryway from her room to the bathroom was not lighted, there was no light in the bathroom, there were no doors opening and throwing light into the corridor. In the bathroom the window shade was drawn. The only other window was in the stair casing, with the shade up. Looking for the bathroom she lost her way and went along to the window at the stair casing thinking

it was the bathroom because the shade was up. Instead of going into the bathroom she walked into the flight of stairs and fell, striking her head against the foot of the stairs. The bathroom door and the stairway where the accident happened are on the same wall. The distance from her room to the bathroom is about six feet and from that doorway to the door of the stairway is about six feet.

On the above excerpted facts the board could find that the employment of the injured employee in a large sense was continuous: she was required to sleep on the premises so as to be at all times subject to call as well as to insure her presence at the hospital when the day began at seven o'clock. The board could therefore properly find that the accident happened during the course of her employment, unless her employment at the time of her injury was suspended by reason of the fact that that day was an assigned "day off." There was on the facts no break in the continuity of her service: to be free, to have the day to herself, it was necessary that she should be present at breakfast preceding the accident, and there and then ascertain if she was to have freedom for the day. The accident happened upon the premises and the possibility that a person might in the darkness of the corridor, and in the circumstances described make a mistake in choosing the doorway of the stairway for the entrance to the bathroom is a hazard and natural risk attending the use of the corridor in the conditions that obtained that day.

Assuming the accident to have happened in the manner described, the use of the corridor to reach the bathroom to answer a call of nature was a use which was to be expected as a necessary incident of the employment, and the accident was one which arose out of the employment and in the course of the employment.

The finding that the accident arose out of and during the course of the employment is not inconsistent with *Rourke's Case*, 237 Mass. 360, *Bell's Case*, 238 Mass. 46, and *Babineau's Case*, 254 Mass. 214, because, on the facts in each of those cases the employee was not at the time of the accident in the active service, although in the general employment

of the employer.  *Gardner's Case,* 247 Mass. 308, is much closer than the cases cited, *supra,* but falls into that line of cases which deal with the so called "street risks." *Fumiciello's Case,* 219 Mass. 488.  *Donahue's Case,* 226 Mass. 595.  *Braley's Case,* 237 Mass. 105.

Upon the record we find nothing to warrant a reversal of the decree because of error in the determination of the average weekly wages.

<em>Decree affirmed.</em>